Good morning, Your Honor. Arvind Swaminathan for the plaintiff appellate, Mr. William Smith. I'm here with my co-counsel, Tanaya Scheinman, today. I'd like to serve two minutes for resettled time. Your Honor, I just want to first make sure that the court has received both the defendant's 28-J letter that was mailed on Friday and our 28-J response that was Billy Faxer, the clerk of the court, on Monday, addressing the issue of the Supreme Court's recent decision in Yo. And briefly just point out that although the defendants have argued in this case that Yo demonstrates that the failure, the district court's failure to give notice was harmless, that Yo does not stand for any such point. And the Supreme Court made no discussion. Can you slow down just a little bit? Sorry. The Supreme Court made no discussion either of the Americans with Disabilities Act and the requirement for exhaustion, nor did it make any discussion of the district court's failure to give notice and what the ramifications of that are. Your Honor, in this case, there are two district court errors that both require independent reversal and remand for further proceedings. First, the district court failed to give Mr. Smith notice of his opportunity to introduce rebuttal evidence on the issue of exhaustion in response to the defendant's motion to dismiss. And in that, that error is a reversible error that requires reversal because the district court did not make that notice, nor in this case did the defendants issue that notice to Mr. Smith. Second, the district court erred as a matter of law in misallocating the burden to Mr. Smith to prove that he had exhausted his administrative remedies. Under this court's decision in Wyatt, the burden is on the defendants to prove that the plaintiff's inmate failed to exhaust his administrative remedies. And the court's improper shifting the burden to Mr. Smith to make that show of evidence is an error that should be reviewed de novo and reversed in this case. Well, could you address then the Hicks affidavit? Because the Hicks affidavit says, with respect to the grievances, that it says there were no other grievances filed. That's correct, Your Honor. And with respect to that issue, we would concede that the affidavit is sufficient show of proof under Wyatt. Okay. So then what about the discrimination complaints? Because doesn't he allege claims against DeHaan and Hill and Butler? That's correct, Your Honor. And there are two points to be made about that. The first is that in filing discrimination complaints, inmates are not required to name every single party that may have been involved in the act of discrimination that he's alleging. All they're required to do under the Oregon procedures is explain what the instance of discrimination was that they're complaining of, and then allow the prison system an opportunity to investigate his claims and make a decision. He does not have to specifically name any individual. That being said, Mr. Smith has also made claims against Officer Curtis for Officer Curtis's harassment of him in claiming that that is an issue of discrimination against him. And there's nothing either in the Hicks affidavit or in the record that demonstrates that Mr. Smith did not file a discrimination complaint against Officer Curtis with regards to that issue of stealing his food from his kosher food tray. Okay, so where the Hicks declaration says that he has not filed discrimination complaints specifically naming DeHaan, Hill, or Butler, even though those are the primary people that he names specifically in his complaint and seeks, what, I think $10,000 for each of them? Correct. So that would say that he hasn't exhausted a discrimination complaint against them, at least by name, would it not? Well, it would by name, Your Honor, but that's not one of the requirements that the inmate needs to address in filing a discrimination complaint or appeal. So they may be part of the anonymous? They may be, but it's immaterial whether or not he names them specifically. He has to only, for the purpose of the exhaustion requirements, to give the prison an opportunity to investigate the complaint and see whether there's not any merit to it so that it can take action. I understand, but I'm just trying to get my hands on what is in the Hicks declaration, because you say, you know, in that declaration, paragraph 15, she said these are the only grievances filed by inmate Smith to date, and you say that's adequate. Correct. Then I go to the discrimination complaint section. She goes through all of the discrimination complaints that he's filed, plus there's this paragraph 36, which says, and there are no discrimination complaints specifically naming DeHaan, et cetera. So what more would the government have had to allege or set forth? What's missing from this declaration? Your Honor, I think what's missing from the declaration is exactly what is in the declaration with respect to the grievances. Essentially, Ms. Hicks could have said, I have reviewed Mr. Smith's file of discrimination complaints and appeals, and this is all that is in his file. These are all the discrimination complaints and appeals that Mr. Smith has filed. And if she had done that, and if her affidavit attested to that, then there would be ‑‑ then it would go to the district court, and it would be an adequate record for the district court to make a factual finding. Okay. Now, let me ask you this. He does make claims against these people by name. Okay. So you're ‑‑ you have to assume for purposes of exhaustion that there must ‑‑ there may be some complaint, discrimination complaint that she hasn't addressed by specific complaint number, and it would be a discrimination complaint that does not specifically name them by name. Correct. That's what you're saying is the missing link. Correct, Your Honor. I mean, it is possible that he has filed a discrimination complaint against one individual and said, well, there may be others, and here are all the instances of that. And that may be ‑‑ and that is what's missing from the affidavit. All right. Thank you. If I may return, Your Honor, to the notice point briefly. The district court has an obligation to ensure that the pro se plaintiff inmate receives notice so that they know that they have an opportunity to introduce rebuttal evidence demonstrating that they have exhaustion. Not only did the district court fail to provide that notice, but the defendants under Rand can also provide that notice. And that notice was not given to Mr. Smith, and that is a reversible error. Now, the defendants have argued in their brief that a harmless error review standard should be applied. And actually, Rand created a bright line rule. And in so saying, the Rand court said specifically, we continue to believe that the harmless error review is inappropriate in most cases. We will not assume the impossible task of attempting to divine whether an individual inmate understood what was at stake if he failed to put all his evidence before the court. In so doing, the Rand court explained specifically that there are only very limited exceptions where the harmless error standard needs to be applied. In this case, there is no objective evidence in the record, which is what the Rand court focused on. It focused on the unusual cases, one where objective evidence is in the record. And in this case, there is no such evidence in the record that demonstrates that Mr. Smith understood the contours of what he had an opportunity to do and what he may be required to do at an unenumerated Rule 12b motion to dismiss, and that is introduce evidence demonstrating that he had, in fact, exhausted his administrative remedies. And because there is no objective evidence, the harmless error review is not applicable under Rand. Moreover, there is evidence in the record that Mr. Smith thought the opposite. There is evidence that he thought that testimonial or other types of legal evidence may not be submitted at this procedural posture. And both in the record in his opposition to the motion to dismiss at pages 129 and our further excerpts in pages 131, he seems to be, he appears to be arguing that Ms. Hicks's affidavit is an improper procedural tool at this point, and that that is evidence enough that he did not have, that he did not have notice and that he did not know or, excuse me, that there's no objective evidence in the record that he knew that he could introduce that evidence. Do you agree that the exhaustion requirement does apply to ADA claims under the PRLA? Your Honor, in this circuit, the issue is undecided, and there are no, there's no legal authority in this circuit that binds us to that precedent. I believe we've adequately addressed that issue in the briefs, and we'd like to rely on that argument there and spend, I'd like to reserve the remainder of my time unless you have further questions. Thank you. May it please the Court, Stephen Powers, for defendants. Given the Supreme Court's decision in Woodford v. Noe, I think the threshold issue of whether the PLRA requires exhaustion for all the plaintiff's claims, including his ADA claim, is adequately covered in the briefs, and I'd like to spend the balance of my time in arguing the next two questions after this Court decides that threshold legal issue. First, whether defendants' unenumerated 12b motion adequately carried its burden, and second, whether failure to give notice, and we do concede that the district court and defendants did not give the notice required under Rand, but whether that was harmless error in that very narrow category of cases that can be established on the record that it's harmless. Moving first to the Hicks' affidavit, again, I think defendants' or plaintiff's argument takes a narrowly, unduly narrow view of what Hicks' affidavit said. As Your Honor pointed out, that there were no other grievances filed, and that Hicks' affidavit did not use that same language for discrimination complaints can be inferred, and remember, this Court's standard of review, which we disagree with as far as plaintiffs, the court, the district court was allowed to make a factual finding, and given Hicks' affidavit, the Court could say Hicks' looked at all of the defendants that were named in this lawsuit and affirmatively stated that there were no discrimination complaints filed against three of the four defendants, DeHaan, Hill, and Butler. There were discrimination complaints filed against Correctional Officer Curtis, the fourth defendant. Kennedy. Would this have been an error or an ambiguity that would have been clarified by counter-affidavits and the like, had he been given proper RAM notice? It could have been, but given his position that he did not have to exhaust administrative remedies with this, I think it's equivalent to the concession that this Court talked about in Wyatt, that he didn't need to. He was proceeding, and not in his response to the motion to dismiss, while he didn't attach an affidavit, he did attach other responsive evidentiary materials, which that notice talks about, when he attached some documents from explaining why he didn't, in his view, didn't need to exhaust his ADA claims. He was responding to that. What should the district court have done under Rand before making a decision in this case? The district court should have issued the notification of the pro se's opportunity to reply with responsive evidentiary materials and or counter-affidavits. In understandable language, that even a prisoner would understand that they've got a right to do before the ax falls. Correct. And that wasn't done. That was not done. But given both his position in the district court and his demonstrated ability to produce evidence. Well, his position up to that point, he hadn't received a Rand notice. How do we know that he, his position was going to change or that he was going to find other reasons? That he did – well, his reasons, he didn't want – his position was that he didn't have to exhaust his remedies. And objectively, it's the State's position, the defendant's position, that since he demonstrated his ability to attach other evidence and to contest everything that the defendant said, and if you look at what his response to the defendant's motion to dismiss was, he cites Federal Rule of Civil Procedure 11 and talks about the requirements for an affidavit. He cites or he uses language, legal language, that at least suggests that if he thought he wanted to prove that he did exhaust his remedies, he could have said it. Now, it might not have been the affidavits that are required, and we'd be in a different situation. But given his position that it's our – the defendant's position that it is harmless error. The other – Well, had the district court informed him that exhaustion was required? The district court did not inform him of that. The defendant's motion to dismiss certainly did. I'm just wondering, this case that you rely on to say that the ADA claims are within the exhaustion requirement of the PLRA just came out, July 2706, the Whitford case. But that confirmed the Court's earlier pronouncements in Porter, in Booth, that talked about all prisoner claims under the PLRA need to be exhausted. And so that just further confirms what the Court – the Supreme Court has already said. Well, if the Supreme Court's already said it, why are we getting a 28J letter that's telling us we have this new law that's confirming – I mean, saying the ADA claims specifically? Because it also talks about procedural default. And any of his claims are procedurally defaulted for this conduct that happened over four years ago. And that's the essential part. Going back to the harmless error part, if you look at the OARs, the Oregon Administrative Rules that are included in the supplemental excerpt of record, and I believe also in the further excerpt of record, talks about the timelines, 30 days of the incident giving rise to a grievance, 180 days giving rise to a discrimination complaint. All of those have sufficiently passed. That is also procedurally defaulted. And that's why it ties in both to the legal matter, as Your Honor talked about, but also into the harmless error argument. Because if this is going back to the district court, all we have are, did you exhaust back in 2002 or whenever he made these complaints. He hasn't intimated or suggested that he did, that he did exhaust his remedies. In Wyatt, this Court in footnote 15 talked about he – the plaintiff in that case said, I did, and I have a letter to prove it. Send it back to the district court so that I can prove that. In this case, we don't have that type of evidence. The other thing I wanted to talk about is that the concerns motivating the fair notice rule and why this is in that narrow category. Suppose – suppose the – he got the RAND notice, and he continues to believe that he doesn't have to exhaust, but in abundance of caution, just in case the district court goes the other way, he files an affidavit saying, but I did exhaust, and these are the reasons why. Then there would be prejudice, right? There would be, Your Honor. And we recognize that, that if in an abundance of caution this Court feels that it's better to send it back to the district court, that is certainly a possibility. What we're saying is under why you have the fair notice requirement. The Court in RAND identified about four reasons, maybe others, about limited availability to interview witnesses. A pro se has that. Limited availability to seek out evidence. In this situation, all the evidence rests with plaintiff. He either exhausted and sent in letters, and he could have said that, or he doesn't. The concerns of fair notice that he had to go out and interview other people doesn't rest with others. It does rest with him. Roberts. But the problem is that we sometimes do this based upon the logic of what a lawyer to respond to or what the average human being. I mean, this is a prisoner, and the RAND notices for a purpose, to put them on notice that something's going to happen so they can rethink it and let them know they can file affidavits. And I'm just wondering how we're able to say that's harmless based upon just that what his position has been up to that point. Are there any cases that are closer to this of what when there's no harm, no foul? There aren't with respect to the State. The defendants have found with respect to the RAND notice. This is uncharted territory in the sense that RAND left a very narrow door, a very small opening in the door, and we are trying to put our foot in it. It's so easy for the district court to do it. That's very true. And but we believe it can be established on the record, given what his position was and his ability, if you look, he's filed affidavits in the district court. He challenged the sufficiency of the affidavit under Rule 11, again, demonstrating his ability to negotiate or negotiate what kind of things I can put into the district court, what arguments I can make. This isn't a shy inmate in terms of his litigation tactics in – if you have an objective view of the record. The other two concerns motivating the fair notice rule was access to legal materials and ability to meet deadlines. He took two extensions to file his response to the motion to dismiss. Those both were granted. Access to legal materials, again, citing Rule 11 and parodying the language of Rule 11 in his response and also using language that comes from 56, he – in the State's position, that could establish on the record that this is an exceptional and unusual case and, therefore, does not need to be reversed. But the legal principle underlying that the ADA claims does need to be exhausted in the PLRA is our principal argument. Unless the Court has any other questions, thank you. Thank you. Your Honor, I just want to make two brief points on rebuttal. The first is with respect to Mr. Power's argument about the harmless error, is that what the Court made very clear in Rand is that, and I quote, And what Mr. Powers is advocating for is a subjective look into what Mr. Smith intended to do by making certain arguments in his opposition to motion to dismiss. The Rand notice is motivated not only by the factors that Mr. Powers indicated, but it's principally motivated by the unsophisticated nature of pro se prisoner inmates. Specifically, this is a more complicated procedural device than the summary judgment rule, which is what Rand was decided under. This is an unenumerated 12b motion to dismiss. In fact, there is nothing in the rules that discusses whether evidence can be admitted on a 12b motion, on an unenumerated 12b. It is a creation of the Court in Wyatt that requires it brought in this fashion. And so for those reasons, the notice is duly prejudicial. And, moreover, I also want to just point out on the second point is the district court in this case made no factual findings. It concluded on the evidence that had been submitted to it and expected Mr. Smith to submit evidence of rebuttal. Specifically, the Court noted that the evidence was undisputed and that it essentially looked to Mr. Smith to introduce evidence to demonstrate his exhaustion. For that reason, it is evidence of the fact that the district court shifted the burden to Mr. Smith to come forward with evidence to demonstrate his exhaustion. And for those reasons, we respectfully request this Court reverse the remand to the district court for further proceedings. All right. Thank you, counsel, both counsel, for the argument. And thank you also for taking this on. Counsel, we want to thank you for submitting your services without pay on this important case. It's a credit to the bar when we can call upon people to represent where we think representation is necessary and they can't afford it and have a presentation made like you made. We thank you for it. Thank you, counsel. Thank you.
judges: Wallace, Wardlaw, Fisher